**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **REYNALDO RODRIGUEZ** | : | |
| | : | |
| **v.** | : | **C.A. No. 08-316S** |
| | : | |
| **A.T. WALL** | : | |

**MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS**

For the reasons identified in its accompanying memorandum of law, designated party/respondent State of Rhode Island moves to dismiss Petitioner Reynaldo Rodriguez's Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody.

Respectfully submitted,

**STATE OF RHODE ISLAND**
By its Attorneys,

**PATRICK C. LYNCH**
**ATTORNEY GENERAL**

**/s/ Aaron L. Weisman**

**AARON L. WEISMAN, # 4438**
Department of Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400

Date: September 17, 2008

PDF created with pdfFactory trial version www.pdffactory.com

**CERTIFICATION**

I hereby certify that on September 17, 2008, I filed this document electronically and that it is available for viewing and downloading from the ECF system. I also certify that I caused a copy of the within document to be sent to the following by first-class mail, on the same date:

Reynaldo Rodriguez
PO Box 8274
Cranston, RI 02920

/s/ Aaron L. Weisman



PDF created with pdfFactory trial version www.pdffactory.com

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **RENALDO RODRIGUEZ** | **:** | |
| | **:** | |
| **v.** | **:** | **C.A. No. 08-316S** |
| | **:** | |
| **A.T. WALL** | **:** | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION**
**TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Reynaldo Rodriguez's Rhode Island Superior Court possession-of-heroin-with-the-intent-to-deliver and possession-of-drug-paraphernalia-with-intent-to-deliver convictions were affirmed by the Rhode Island Supreme Court in State v. Rodriguez, 798 A.2d 435 (R.I. 2002). He subsequently, in October of 2002, filed an application for post-conviction relief in the Rhode Island Superior Court, in which "[t]he sole issue at the hearing, as agreed by the parties, was whether defense counsel's failure to present the testimony of [Petitioner's alleged co-conspirator] Pagan at trial (either live or through introduction of his prior hearing testimony) constituted ineffective assistance of counsel, in violation of the Sixth Amendment to the United States Constitution, warranting a new trial" (Rhode Island *Superior Court Decision in Case Number PM-02-5928*, at p.8.) Following a Superior Court evidentiary hearing, the hearing justice issued a 32-page rescript, in which she denied Petitioner's ineffective assistance of counsel claim. The Rhode Island Supreme Court subsequently affirmed such Superior Court denial of post-conviction relief in Rodriguez v. State, 941 A.2d 158 (R.I. 2008), and Petitioner has challenged such denial in the instantly filed 28 U.S.C. § 2254 action, in which, although it is not entirely clear, he seems to (1) take issue with the Rhode Island

PDF created with pdfFactory trial version www.pdffactory.com

Supreme Court's rejection of his "pagan-predicated" claim[1], (2) take issue with his trial counsel's "Cronan" trial strategy[2], and (3) allege some sort of conspiracy to frame him[3]. Because only the first of these claims, however, appears to have been the subject of Petitioner's state post-conviction relief action (Rodriguez v. State, 941 A.2d at 162-63), the two latter assertions, seemingly unexhausted in state court, render Petitioner's instant action a "mixed" one, requiring (in the absence of the Petitioner withdrawing the unexhausted claims) the without-prejudice dismissal of the Petition.[4]

Turning to the one claim that the Rhode Island Supreme Court did address, that Court, in most relevant part, discussed such issue as follows:

> On October 22, 2002, Mr. Rodriguez applied for postconviction relief, alleging constitutionally ineffective assistance of his trial

[1] ***Please see Petition*** at Page # (3) – (4).

[2] ***Please see Petition*** at Page # (1)(appearing to take issue with his trial attorney's strategic decision to place blame on Cronan).

[3] ***Please see Petition*** at Page # (1)(claiming Detective's "fabricat[ion]"), Page # (4)(alleging an "orchestration[]" between his trial counsel, the prosecutor, and the police), ***id.*** (claiming that his "notoriously villainous attorney *** was in kahoots [sic] with his cronyism friends to seal my conviction"), and Page # 5 (claiming that Detective "had fabricated the [search] warrant").

[4] It is well settled that a district court may not adjudicate a petition for the issuance of a writ of habeas corpus unless and until the petitioner has exhausted his or her state court remedies. ***See*** 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus . . . shall not be granted unless it appears that— . . . the applicant has exhausted the remedies available in the courts of the State . . . ."). "A claim for habeas corpus relief has been exhausted where the claim has been 'fairly presented' to the courts." Josselyn v. Dennehy, 475 F.3d 1, 3 (1st Cir. 2007). Where a petitioner has filed a "mixed" petition, that is, a habeas petition containing both exhausted and unexhausted claims, ***see*** Nowaczyk v. Warden, 299 F.3d 69, 75 (1st Cir. 2002), a district court should generally dismiss the petition without prejudice, ***see*** Rhines v. Weber, 544 U.S. 1528, 1533 (2005); Rose v. Lundy, 455 U.S. 509 (1982), unless the habeas petitioner can demonstrate "good cause" for failure to exhaust, that the claims are potentially meritorious, and that there is no indication that the petitioner engaged in intentionally dilatory tactics. (Rhines, 544 U.S. at 277.)



PDF created with pdfFactory trial version www.pdffactory.com

counsel for failing to call a witness, or, in the alternative, to introduce the witness's affidavit or previous testimony. We recount only those facts sufficient for the resolution of this appeal.

The key piece of evidence introduced against Mr. Rodriguez at his trial was a shoe box containing various items associated with the use and distribution of heroin. Laboratory analysis confirmed the presence of heroin residue on the items. The shoe box had been found by Providence police officers, acting pursuant to a search warrant, above a ceiling panel in the shower room of the Rogers Recreational Center. The only named target of the investigation was Leo Cronan, Jr., the director of the Rogers Recreational Center. Fingerprints on the items were identified as belonging to Mr. Rodriguez and a man named Emiliano Pagan.

Mr. Pagan was charged with the same three offenses as were brought against Mr. Rodriguez, and on June 24, 1997, Mr. Pagan pled *nolo contendere* to all three, including the conspiracy count. On March 24, 1998, however, Mr. Pagan executed an affidavit that purported to exculpate Mr. Rodriguez. Further, on July 7, 1998, Mr. Pagan testified at a Superior Court hearing that he had taken the shoe box from a group of youths at the recreation center in the hope of using its contents to make money. Later that day, Mr. Pagan said, he asked Mr. Rodriguez for a ride home, and he placed the box on the front passenger seat of Mr. Rodriguez's automobile while he went back into the recreation center. When he returned, Mr. Rodriguez told him that he had looked through the box and he demanded that Mr. Pagan remove the box. The hearing justice who presided at the hearing at which Mr. Pagan testified described his testimony as "highly incredible."

The thrust of Mr. Rodriguez's postconviction-relief argument was that his trial counsel's failure to present Mr. Pagan's testimony, either in person or by introducing a transcript of his previous testimony, constituted ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. The only witness to testify in support of Mr. Rodriguez's application was his trial attorney, John M. Cicilline. Mr. Cicilline testified that his theory of defense was to portray Mr. Cronan as the person solely responsible for the shoe box and its contents. He explained that Mr. Cronan was the initial target of the police investigation and the sole possessor of the keys to the shower room where the drug paraphernalia were discovered.

Mr. Cicilline acknowledged that his efforts to point the finger at Mr. Cronan, even if successful, did not preclude a finding of guilt against Mr. Rodriguez based upon a theory of joint possession. He also admitted that Mr. Pagan's testimony could have explained how his client's fingerprints innocently got on the shoe box and drug paraphernalia. On cross-examination, however, Mr. Cicilline



PDF created with pdfFactory trial version www.pdffactory.com

acknowledged that Mr. Pagan's testimony would have seriously undermined the defense's theory that the evidence strongly indicated that Mr. Cronan owned the paraphernalia.

In her very detailed rescript, the hearing justice noted that Mr. Rodriguez's failure to call Mr. Pagan as a witness at the postconviction-relief hearing deprived the court of any opportunity to determine whether his testimony at the trial would have helped the defense. Even assuming his testimony would be consistent with his affidavit and previous testimony, she was unable to assess its weight and credibility. The hearing justice, therefore, rejected any argument that trial counsel was deficient by not calling Mr. Pagan to testify at trial.

The hearing justice further held that Mr. Rodriguez would not have been able to have Mr. Pagan's affidavit admitted at trial because it had never been authenticated nor were his statements subject to cross-examination. *See* Flynn v. Al-Amir, 811 A.2d 1146, 1152-53 (R.I. 2002). Moreover, she said that there was insufficient evidence that Mr. Pagan was unavailable to testify at trial, a necessary predicate to the admission of his previous sworn testimony. She rejected Mr. Rodriguez's suggestion that Mr. Pagan was unavailable because of an outstanding warrant for his arrest on a robbery charge. She noted that Mr. Rodriguez had neither asked him to testify voluntarily nor attempted to subpoena him and said it would be rank speculation to conclude that Mr. Pagan was unavailable to testify at trial.

Moreover, the hearing justice determined that "Mr. Cicilline made a sound tactical decision at the time, with full knowledge of Pagan's affidavit and prior hearing testimony, not to present Pagan as a witness at trial." Significantly, she noted that Mr. Pagan had pled *nolo contendere* to the charge of conspiracy to possess with intent to deliver the very same heroin that was the subject of the charges against Mr. Rodriguez. Also, Mr. Pagan's testimony would not have explained away other incriminating evidence that had been introduced against Mr. Rodriguez at the trial, and it would have been inconsistent with his primary theory that Mr. Cronan alone possessed the paraphernalia. Finally, she observed that Mr. Pagan's testimony at the previous hearing had been found not to be credible and did "not make a lot of sense." In conclusion, the hearing justice determined that Mr. Cicilline conscientiously, after consultation with Mr. Rodriguez, chose to mount the best defense available to him, which she characterized as "not only objectively reasonable under the totality of the circumstances, but sound."

***

Affording the hearing justice's findings of historical fact the deference to which they are entitled, we are in complete agreement with her ultimate conclusion that Mr. Rodriguez "has fallen



PDF created with pdfFactory trial version www.pdffactory.com

> woefully short of proving that the conduct of his able trial counsel in not calling Pagan as a witness at trial or presenting his prior sworn hearing testimony was objectively unreasonable * * *."
>
> On the contrary, trial counsel's failure to present Mr. Pagan as a witness or attempt to introduce into evidence the transcript of his previous testimony appears to us to have been a rather sound tactical decision. Mr. Pagan's belated attempt to exonerate Mr. Rodriguez clearly would have undermined the latter's efforts to deflect culpability to Mr. Cronan. Moreover, Mr. Pagan's testimony undoubtedly would have provided the state with fertile opportunities for cross-examination. Not only had Mr. Pagan's credibility been totally discounted at the previous hearing, but he also had an extensive criminal history and had himself pled ***nolo contendere*** to conspiring with Mr. Rodriguez to possess heroin with intent to deliver, the same offense that was the subject of Mr. Rodriguez's trial-an incident seemingly more incriminating than exculpatory.
>
> This Court has said that it "'will not meticulously scrutinize an attorney's reasoned judgment or strategic maneuver in the context of a claim of ineffective assistance of counsel.'" Hampton v. State, 786 A.2d 375, 382 (R.I. 2001) (quoting Brennan, 764 A.2d at 173). The decisions Mr. Cicilline made that Mr. Rodriguez now contends were objectively unreasonable and prejudicial are precisely the type of strategic decisions this Court will not second-guess. ***See*** Brennan, 764 A.2d at 173. We deem them to be tactical decisions clearly within the bounds of what is constitutionally required to constitute effective assistance of counsel.
>
> ***
>
> For the foregoing reasons, we affirm the judgment denying Mr. Rodriguez's application for postconviction relief and return the papers in the case to the Superior Court.

(Rodriguez v. Wall, 941 A.2d at 160-63.)

In assessing the propriety of this challenged determination in a 28 U.S.C. § 2254 action, it is, of course, necessary to evaluate the claim in light of 28 U.S.C. § 2254(d), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal



PDF created with pdfFactory trial version www.pdffactory.com

law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id.[5]

Such an evaluation, the State respectfully suggests, reveals no decision contrary to, or involving an unreasonable application of, clearly established law as determined by the Supreme Court of the United States. For, given that a Providence County Superior Court hearing justice had already determined that Mr. Pagan's story allegedly exculpating

[5] The terms "contrary to" and "unreasonable application" in § 2254 have independent meaning. See Bell v. Cone, 535 U.S. 685, 694 (2002). The "contrary to" clause applies only when a state court either employs a test or rule of law that is inconsistent with one announced by the United States Supreme Court or reaches the opposite conclusion on materially indistinguishable facts. See id.; Williams v. Taylor, 529 U.S. 362, 404-10 (2000); Rashad v. Walsh, 300 F.3d 27, 34-35 (1st Cir. 2002). An "unreasonable application" of federal law exists when a state court (1) uses the correct legal standard in an objectively unreasonable manner, (2) unreasonably extends Supreme Court precedent to an inappropriate context, or (3) fails to extend such Supreme Court precedent to an appropriate context. See Bell, 535 U.S. at 694; Rashad, 300 F.3d at 34-35. This standard "does not demand infallibility: a state court's decision may be objectively reasonable even if a federal habeas court, exercising its independent judgment, would have reached a different conclusion." Rashad, 300 F.3d at 34-35.

Moreover, an unreasonable application of Supreme Court precedent is not the same as an erroneous application; "the mere fact that there was some error or that the state decision was incorrect is not enough." McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002). The "unreasonableness" of the ruling must be incrementally "great enough to make the decision unreasonable in the independent and objective judgment of the federal court. If it is a close question whether the state decision is in error, then the state decision cannot be an unreasonable application." McCambridge, 303 F.3d at 36-37.

Finally, "'the state court's factual findings are entitled to a presumption of correctness that can be rebutted only by clear and convincing evidence to the contrary.'" Rashad, 300 F.3d at 35-36 (quoting Ouber v. Guarino, 293 F.3d 19, 27 (1st Cir. 2002)). Unless a petitioner carries this burden, a federal habeas court is obliged to credit the factual findings of state courts on the trial and appellate levels. Id. This includes those reasonable inferences drawn by the state courts from the evidence presented at trial as well as the trial record. Id. at 39 n.8.



PDF created with pdfFactory trial version www.pdffactory.com

Petitioner was not credible, it is not possible to cast aspersions on trial counsel's strategic decision to defend the charges by "trying to point to Cronan as the individual in sole possession of the drug paraphernalia" (*Superior Court Rescript* at p. 31),[6] rather than relying upon Pagan, an individual not only with "an extensive criminal history" but who had also "himself pled *nolo contendere* to conspiring with Mr. Rodriguez to possess heroin with intent to deliver, the same offense that was the subject of Mr. Rodriguez's trial" (Rodriguez v. Wall, 941 A.2d at 162). It simply cannot be said, then, that Petitioner's trial counsel's strategy was so objectively unreasonable as to constitute a violation of the Strickland standard.[7] The Rhode Island Supreme Court's decision, then, was evidently not an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.

Wherefore, for the reasons advance above, Respondent State of Rhode Island most respectfully moves to dismiss Petitioner Reynaldo Rodriguez's Petition Under 28 U.S.C. § 2254 For Writ Of Habeas Corpus By A Person In State Custody.

[6] The Superior Court post-conviction relief hearing justice further determined that "[t]he Cronan defense, while not perfect given the fingerprint evidence against Rodriguez and the possibility of a finding of joint possession, gave the defense an opportunity to exploit the search warrant affidavit that targeted only Cronan and seek to disqualify or impeach the State's fingerprint expert who also was a detective." (*Superior Court Rescript* at p. 31.)

[7] Pursuant to Strickland v. Washington, 466 U.S. 668 (1984), a sustainable ineffective assistance of counsel claim requires that a Petitioner show "(1) that the counsel's performance was so deficient and the errors so serious that they violate a defendant's Sixth Amendment guaranty of counsel; and (2) that this deficient performance prejudiced his or her defense and deprived the defendant of his or her right to a fair trial." Ouimette v. State, 785 A.2d 1132, 1139 (R.I. 2001).



PDF created with pdfFactory trial version www.pdffactory.com

Respectfully submitted,

**STATE OF RHODE ISLAND**
By its Attorneys,

**PATRICK C. LYNCH**
**ATTORNEY GENERAL**

**/s/ Aaron L. Weisman**

**AARON L. WEISMAN, # 4438**
Department of Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400

Date: September 17, 2008

**CERTIFICATION**

I hereby certify that on September 17, 2008, I filed this document electronically and that it is available for viewing and downloading from the ECF system. I also certify that I caused a copy of the within document to be sent to the following by first-class mail, on the same date:

Reynaldo Rodriguez
PO Box 8274
Cranston, RI 02920

/s/ Aaron L. Weisman



PDF created with pdfFactory trial version www.pdffactory.com